UNITED STATES DISTRICT COURT
DISTRICT OF NEW HAMPSHIRE

Glenn Beane, as assignee
of Terry R. Nason

    v.                                  Civil No. 10-cv-307-JL
                                    Opinion No. 2012 DNH 023
Mii Technologies, L.L.C, *et al.*

### MEMORANDUM ORDER

This case raises a question as to this court's jurisdiction to order execution of a judgment against property when its ownership has been put into dispute in pending state court proceedings.[1]  Glenn Beane obtained an assignment of a judgment issued by another United States District Court, in Nason v. Mii Techs., LLC, No. 04-77 (D. Me. Sept. 21, 2005), and subsequently registered here, see 28 U.S.C. § 1963, awarding, inter alia, roughly $15,550 against Mii Technologies, L.L.C.  He now seeks to execute on that judgment against funds held in the account of a third-party law firm, Lawson & Persson, P.C., at Meredith Village Savings Bank, claiming that those funds belong to Mii.

Those funds, however, are the subject of an interpleader action in the Grafton County Superior Court, which Lawson &

---

[1]While the parties have not raised any jurisdictional issues, this court has authority to inquire sua sponte as to its subject-matter jurisdiction, see, e.g., Fafel v. DiPaola, 399 F.3d 403, 410 (1st Cir. 2005), as well as whether it should abstain from exercising it, see Jimenez v. Rodriguez-Pagan, 597 F.3d 18, 27 n.4 (1st Cir. 2010).

Persson commenced before Glenn began his efforts to execute against those funds here.  Lawson & Persson, P.C. v. Beane, No. 09-113 (N.H. Super. Ct. June 15, 2009).  As explained fully infra, even if this court has the jurisdiction to order an execution against funds that are the subject of an interpleader action in a state court, this court abstains from exercising that jurisdiction under Colorado River Water Conservation District v. United States, 424 U.S. 800 (1976).

## I.  Background

There is a long-running dispute over whether the funds in Lawson & Persson's account belong to Mii, or to one of its owners, Alan Beane, who is also Glenn's brother.  Alan and Glenn jointly owned Mii but, after the business collapsed in 2004, started battling each other in a series of lawsuits in this court and elsewhere.  More than one of these suits has raised the issue of who owns the funds in the account (or the promissory note that generated the funds when its maker tendered a payment).

First, Glenn sued Mii in Grafton County Superior Court, naming both Lawson & Persson and the Bank as "relief defendants." Beane v. Mii Techs., LLC, No. 08-79 (N.H. Super. Ct. June 10, 2008).  Glenn alleged, among other things, that Mii had fraudulently transferred funds to Alan by directing that Lovejoy,

Inc., which had purchased assets from Mii, provide part of the payment in the form of a note payable to Alan in the sum of $150,000. Glenn obtained a pre-judgment attachment against the note from the Superior Court, which rejected--in a preliminary ruling--Alan's argument that he, rather than Mii, owned the assets that Lovejoy purchased (which, he claimed, would have entitled him to the payment). Beane v. Mii Techs., LLC, No. 08-79 (N.H. Super. Ct. Oct. 18, 2008).[2] But Glenn voluntarily dismissed the fraudulent transfer claim before trial, where the court found in Mii's favor on the rest of his claims against it.

Shortly after bringing that action, Glenn commenced another lawsuit against Mii in Grafton County Superior Court, seeking to enforce a different promissory note (given by Mii to a third party lender, and subsequently purchased by Glenn). Beane v. Mii Techs., LLC, No. 08-157 (N.H. Super. Ct. Nov. 10, 2008). Glenn ultimately prevailed in this second case, and judgment was entered in his favor in April 2009. After filing the action, Glenn had obtained a pre-judgment attachment against the account itself, through trustee process upon Lawson & Persson and the

---

[2]As Glenn points out, this court had previously granted him the same relief in another action--in which he was sued by Alan and Mii, then brought counterclaims against them--based on essentially the same preliminary finding. Beane v. Beane, No. 06-446 (D.N.H. Oct. 18, 2007) (Muirhead, M.J.). But that action was ultimately dismissed for lack of subject-matter jurisdiction. Beane v. Beane, 2008 DNH 082.

Bank. But, after securing the judgment, he never sought to execute it against the account.

After receiving service of the trustee summons in that action, Lawson & Persson attempted to deposit the funds in the account in the Superior Court, but the clerk returned the check and directed it to file a petition for a bill of interpleader instead. Lawson & Persson eventually did so, alleging that it "is unable to determine and, to date, no definitive judgment has been rendered on the issue of whether the proceeds in [the] account are the property of Alan [], Glenn [], or Mii." While Lawson & Persson did not attempt to deposit the funds into the Superior Court again, its petition stated that they remained in its trust account and would "be paid to [the] court pursuant to such order as the court may make" (capitalization corrected). In October 2011, the Superior Court held a hearing on Glenn's motion for summary judgment, which is pending, and scheduled a final pre-trial conference, for February 8, 2012, as well as a bench trial for later that month.

**II. Discussion**

**A.  Prior exclusive jurisdiction**

It is an "ancient and oft-repeated rule--often called the doctrine of prior exclusive jurisdiction--that when a court of a competent jurisdiction has obtained possession, custody, or

4

control of particular property, that authority and power over the property may not be disturbed by any other court." 13F Charles Alan Wright et al., Federal Practice & Procedure § 3631, at 272 (3d ed. 2009) (footnote omitted). As the court of appeals has explained, the doctrine is "essential to the dignity and just authority of every court, and the comity which should regulate the relations between all courts of concurrent jurisdiction." Mattei v. V/O Prodintoq, 321 F.2d 180, 183-84 (1st Cir. 1963) (quotation marks omitted).

As such, the doctrine of prior exclusive jurisdiction bars one court from ordering the execution of a judgment against property in the possession of another court. 13F Wright, supra, § 3631, at 295 (citing Sec. Trust Co. v. Black River Nat'l Bank of Lowville, 187 U.S. 211 (1902)). Importantly, the doctrine "is not restricted to cases where property has been seized under judicial process before the second suit is instituted, but applies as well where suits are brought to marshal assets . . . and in suits of a similar nature where, to give effect to its jurisdiction, the court must control the property." Princess Lida of Thurn & Taxis v. Thompson, 305 U.S. 456, 466 (1939).[3]

---

[3] Based on the Supreme Court's endorsement of the doctrine of prior exclusive jurisdiction in this case, it is also sometimes known as the "Princess Lida doctrine." See, e.g., United States v. Fairway Capital Corp., 483 F.3d 34, 40 n.2 (1st Cir. 2007).

5

Under the doctrine of prior exclusive jurisdiction, then, had Lawson & Persson deposited the disputed funds into the Superior Court as part of the interpleader action, that court would have "controlled" those funds so as to prevent this court from ordering an execution against them.  See, e.g., Landau v. Vallen, 895 F.2d 888, 893-94 (2d Cir. 1990) (citing cases); 1 Clark A. Nichols et al., Cyclopedia of Federal Procedure § 2.99 (3d ed. 2009); cf. Rossi v. Gemma, 489 F.3d 26, 37 (1st Cir. 2007) (noting that the deposit of funds into a state court's registry "provides strong reasons to defer to a state court proceeding" over their ownership).  But, under New Hampshire law, an interpleader action does not require the actual deposit of the disputed property with the court, so long as the petitioner "offer[s] to deliver possession on order of the court."  Gordon J. McDonald, Wiebusch on New Hampshire Practice & Procedure § 37.06, at 37-4, in 5 New Hampshire Practice (3d ed. 2010) (citing Parker v. Barker, 42 N.H. 78 (1860)).  That is what Lawson & Persson did in its petition for a bill of interpleader, filed at the direction of the Superior Court when it returned the funds after Lawson & Persson had attempted to deposit them in response to the attachment issued in the earlier action.

Under these circumstances, there is little reason to doubt that, by virtue of the pending interpleader action, the funds in

the Lawson & Persson account are under the "control" of the Grafton County Superior Court so that, under the doctrine of prior exclusive jurisdiction, this court cannot order an execution to be taken against them.  Federal courts have ruled that they cannot (or at least should not) grant relief that will interfere with property that is subject to a previously filed state-court interpleader action, even if that property remains in the possession of the petitioner.[4]  See Zellen v. Second New Haven Bank, 454 F. Supp. 1359, 1366 (D. Conn. 1978); Meyer v. St. Louis Sw. Ry. Co., 124 F. Supp. 315, 316-17 (E.D. Mo. 1952); cf. Equifax, Inc. v. Luster, 463 F. Supp. 352, 363 (E.D. Ark. 1978) (expressing "substantial doubt about whether [it] was permissible," under Princess Lida, for a state court to issue an execution against funds subject to a federal interpleader action, even though the funds had not been deposited into the court).

　　Other federal courts, including the court of appeals, have applied the doctrine of prior exclusive jurisdiction to claims for relief against property subject to previously filed litigation over its ownership, even when the property was not

---

[4]While the judgment Glenn seeks to execute was issued by the District Court in Maine in September 2005, and was registered in this court in November 2005, Glenn did not begin his efforts to execute against the funds in the Lawson & Persson account until June 2010, nearly a year after it had commenced the interpleader action in Grafton County.

subject to an interpleader action (or, again, in the actual possession of the first court). See Jenkins v. Martin, No. 05-4729, 2006 WL 2852300, at *2 (7th Cir. Oct. 3, 2006) (unpublished disposition) (previously filed action to collect child support obligation from contested bank account); James v. Bellotti, 733 F.2d 989, 993 (1st Cir. 1984) (previously filed action challenging title to land). Based on the authorities just surveyed, this court concludes that the doctrine of prior exclusive jurisdiction prevents it from ordering an execution of the registered judgment against the funds in the Lawson & Persson account, because those funds are the subject of a previously filed interpleader action in the Grafton County Superior Court.[5]

---

[5] It is worth noting that some courts, including the court of appeals, have described the doctrine as limited to cases where the jurisdiction of the first court is in rem, as opposed to in personam, see, e.g., United States v. One 1986 Chevrolet Van, 927 F.2d 39, 44 (1st Cir. 1991), and some courts, including the court of appeals, have described interpleader actions as in personam, rather than in rem, at least under federal law, see, e.g., Metro. Prop. & Cas. Ins. Co. v. Shan Trac, Inc., 324 F.3d 20, 25 (1st Cir. 2003). Nevertheless, there is some authority that interpleader actions are in rem under New Hampshire law, McDonald, supra, § 37.14, at 37-8, and that state law determines whether a state-court action qualifies as in rem for purposes of the doctrine of prior exclusive jurisdiction, see, e.g., Chapman v. Deutsche Bank Nat'l Trust Co., 651 F.3d 1039, 1045-46 & n.3 (9th Cir. 2011). In this court's view, then, the in personam character of interpleader actions under federal law does not affect the application of the doctrine of prior exclusive jurisdiction here.

**B.     *Colorado River* abstention**

Even if the doctrine of prior exclusive jurisdiction is inapplicable, this court would still decline to exercise jurisdiction over Glenn's request for an execution against those funds.  Under Colorado River, supra, "the pendency of a similar action in state court may merit federal abstention based on 'considerations of wise judicial administration' that counsel against duplicative lawsuits."  Jimenez, 597 F.3d at 27 (quoting Colo. River, 424 U.S. at 817 (quotation marks and bracketing omitted by the citing court)).  Given the "'virtually unflagging obligation of the federal courts to exercise the jurisdiction given them,' and absent the 'weightier considerations' that animate other abstention doctrines, the circumstances permitting abstention under Colorado River are quite 'limited' and indeed 'exceptional.'" Rio Grande Cmty. Health Ctr., Inc. v. Rullan, 397 F.3d 56, 71 (quoting Colo. River, 424 U.S. at 818).  But such circumstances "do nevertheless exist" in some cases, Colo. River, 424 U.S. at 819, and this court believes they exist here.

The court of appeals has "developed a list of factors--which is not meant to be exclusive--for when Colorado River abstention might be appropriate," including:

> (1) whether either court has assumed jurisdiction over a res; (2) the [geographical] inconvenience of the federal forum; (3) the desirability of avoiding piecemeal litigation; (4) the order in which the forums

9

      obtained jurisdiction; (5) whether state or federal law
      controls; (6) the adequacy of the state forum to
      protect the parties' interests; (7) the vexatious or
      contrived nature of the federal claim; and (8) respect
      for the principles underlying removal jurisdiction.

Rio Grande, 397 F.3d at 71-72. "No one factor is meant to be determinative." Id. at 72. Weighing these factors, insofar as they bear upon this matter,[6] this court concludes that abstention is proper.

    First, as already discussed at length, by virtue of the interpleader action in the Superior Court, that court has likely "assumed jurisdiction" over the funds in Lawson & Persson's account (factor 1). Those are the same funds against which Glenn seeks to execute the judgment registered in this action. "There is therefore a possibility for inconsistent dispositions of property"--one court might agree with Glenn that the funds in the account belong to Mii, while another court might agree with Alan that they belong to him--which weighs in favor of abstention. Jimenez, 597 F.3d at 28. This conclusion holds, moreover, even if, as discussed at note 5, supra, the interpleader action did not technically give the Superior Court in rem jurisdiction over

---

[6]Two of the considerations--the geographical inconvenience of the federal forum (factor 2) and respect for the principles underlying removal jurisdiction (factor 8)--carry little if any weight in the analysis here. This case did not arrive here by way of removal, and both courts are roughly the same distance from the location of each of the parties.

10

the funds.  The court of appeals has stated that the first of the <u>Colorado River</u> factors is less "'a matter of jurisdiction'" over the res itself and more an expression of "'a prudential doctrine in which a second court with concurrent jurisdiction will exercise its discretion to defer to another court for the sake of comprehensive disposition of rights in a particular piece of property or in a fund.'"  <u>Id.</u> at 28 n.6 (quoting <u>Levy v. Lewis</u>, 635 F.2d 960, 965-66 (2d Cir. 1990)).  That doctrine applies with full force here, where the interpleader action will dispose of the only two claims to the funds in the account, i.e., Glenn's (through Mii) and Alan's.

   The other applicable <u>Colorado River</u> factors also counsel in favor of abstention.  The success of Glenn's attempt to execute on the funds in the account turns entirely on questions of state law (factor 6), <u>viz.</u>, whether the assets that Lovejoy purchased, and paid for in part by giving the note that produced the funds, belonged to Mii or to Alan at that point.  For purposes of <u>Colorado River</u> abstention, "[i]t is significant that no federal issues are raised . . . and that no federal interest would be served by retaining jurisdiction."  <u>Liberty Mut. Ins. Co. v. Foremost-McKesson, Inc.</u>, 751 F.2d 475, 477 (1st Cir. 1985).  There is likewise no reason to think that the state forum will prove an inadequate forum to resolve a state-law interpleader

action, resolving the rights of the parties under state law, to property located in the state (factor 5), so this consideration is at worst "neutral" to abstention here. Fairway Capital Corp., 483 F.3d at 44-45.

Indeed, the Grafton County Superior Court has already conducted a summary judgment hearing in the interpleader action, and scheduled both the final pretrial conference and the trial, for next month. In assessing the order in which the forums obtained jurisdiction as part of the Colorado River analysis (factor 4), "priority should not be measured exclusively by which complaint was filed first, but rather in terms of how much progress has been made in the two actions." Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 21 (1983). Not only did Lawson & Persson commence the interpleader action over the funds a year or so before Glenn commenced his efforts to execute against the funds in this action, see note 4, supra, but that action stands on the brink of resolution, either through summary judgment or trial. This state of affairs also counsels in favor of abstention. See Villa Marina Yacht Sales, Inc. v. Hatteras Yachts, 947 F.2d 529, 535 (1st Cir. 1991).

Finally, and importantly, the remaining factors relevant here--the desirability of avoiding piecemeal litigation (factor 3) and the "vexatious or contrived" nature of the federal action

(factor 7)--also weigh in favor of abstention.  It is true that, for this purpose, "piecemeal litigation" must include some "additional factor that places the case beyond the pale of duplicative proceedings," which are "the inevitable result" of parallel federal-state litigation.  Jimenez, 597 F.3d at 29 (quotation marks omitted).  The court of appeals has recognized, though, that this "additional factor" may take the form of the parties' "attempt[s] to stall the proceedings in the forum that they found most likely to rule in its favor," threatening more than "routine inefficiency" if both actions persist.  Villa Marina, 947 F.2d at 536-37 (quotation marks omitted).

    This court perceives just such a threat here.  As discussed supra, Alan and Glenn have been embroiled in an unrelenting series of lawsuits arising out of Mii's failure since at least 2006.  Ownership of the funds in Lawson & Persson's account, or the note that produced those funds, has been an issue to one degree or another in at least five different actions:  Alan's 2006 suit against Glenn in this court, both of Glenn's 2008 suits against Mii in the Grafton County Superior Court, the Grafton County interpleader action, and now, this action.  In four of those five actions, Glenn sought to attach or execute against the note or the resulting funds.  In one of them--his second Grafton County suit against Mii--he succeeded in obtaining a pre-judgment

attachment against the funds and prevailed on the merits of the action, but did not seek to execute the judgment against the attached funds.

In light of this history, allowing Glenn to attempt to execute a different judgment against those same funds in this action--while the ownership of the funds is the subject of an interpleader action about to be tried, or potentially decided by summary judgment, in Superior Court--involves "more than just the repetitive adjudication that takes place in all cases implicating [the] Colorado River doctrine." Jimenez, 597 F.3d at 29. To the contrary, it threatens the very "considerations of wise judicial administration, giving due regard to conservation of judicial resources and comprehensive disposition of litigation" that the doctrine serves to protect. Col. River, 424 U.S. at 817.

It also makes the "vexatious or contrived" nature of this litigation (factor 7) apparent. Glenn does not seek to enforce an obligation that Mii owed to him (as noted at the outset, Glenn's attempt to establish that obligation, through his first Grafton County Action, was unsuccessful) but that Mii owed to a third party, from whom Glenn took an assignment of that obligation. This is, so far as this court knows, the second time Glenn has used an assignment of someone else's debt from Mii to bring litigation against it: as also noted at the outset, his

14

second Grafton County action was based on a note that Mii had given to a third-party lender. Furthermore, after Glenn prevailed in that action, he did not try to enforce the resulting judgment against the funds in the Lawson & Persson account, but waited more than a year after the entry of judgment there to try to enforce another judgment against those same funds here. In short, if there is any "reasonable explanation" for this proliferation of litigation, so as to count against abstention here, Rio Grande, 397 F.3d at 72, this court cannot discern it.

    The Colorado River factors therefore cut in favor of abstention here. The court draws additional support from this conclusion from Zellen, supra, where a federal district court abstained from exercising jurisdiction over an action by the plaintiffs seeking, inter alia, to compel a bank to surrender collateral to them, because the bank had previously filed an interpleader action in state court seeking to resolve competing claims to that collateral. 454 F. Supp. at 1365-66. Applying Colorado River, the court reasoned that "[t]he inconvenience for the Bank of having to simultaneously litigate a state suit and a federal suit stemming from the same transaction and involving essentially identical issues . . . is obvious," especially when the state-court interpleader action was "designed [for] and capable of avoiding just such litigation." Id. at 1366. Thus,

the court concluded, "[a]ll the factors of comprehensive disposition of litigation, conservation of judicial resources, and fairness to the parties [were] satisfied" by abstaining from exercising jurisdiction. Id. at 1355. As noted supra, the court also relied on the fact that, as here, the state-court interpleader action over the property at issue had predated the federal-court effort to obtain that property, under the doctrine of prior exclusive jurisdiction. Id. at 1366.

This court finds Zellen both persuasive and instructive here. If there is jurisdiction in this court to issue a writ of execution against the funds subject to the Grafton County interpleader action, this court abstains from exercising it.

**C. Other relief**

In addition to a writ of execution against the funds in the Lawson & Persson account, Glenn's motion seeks other relief, including (1) "post-judgment trustee process" against Lawson & Persson and the Bank, (2) an order that they submit a "trustee disclosure" identifying the assets they hold on behalf of Mii, and their own interest in those assets, (3) a determination that the funds held in the Lawson & Persson account belong to Mii, and not Alan, and (4) a writ of scire facias ordering Mii to show cause why another writ of execution should not issue against it.

The court concludes that it should abstain from exercising jurisdiction over Glenn's requests for this relief as well. The first three claims, in fact, raise many--if not all--of the same concerns that justify abstaining from issuing a writ of execution against those funds. As Lawson & Persson points out, the request to compel a trustee disclosure from it also appears moot in light of the facts that (a) it provided one in response to the trustee process summons in the second Grafton County action, and (b) has affirmatively disclaimed its own interest in the funds by filing the interpleader action.

While the request for the writ of scire facias against Mii does not necessarily implicate the funds in the account, and therefore does not raise the same jurisdictional concerns as Glenn's other requests for relief, the interpleader action has the potential to moot that request as well. If Mii is determined to be the owner of the funds in the account, they will suffice to satisfy the judgment against Mii that serves as the basis of this action. In the interest of judicial economy, then, Glenn's request for a writ of scire facias against Mii is denied without prejudice to his renewing that request should the judgment remain unsatisfied following the resolution of the interpleader action.

### III. Conclusion

This court concludes that it either lacks jurisdiction over Glenn's request for an execution against the funds subject to the Grafton County interpleader action and related relief or, if jurisdiction exists, that it ought to abstain from exercising it under the Colorado River doctrine. Accordingly, Glenn's motion for that relief[7] is DENIED. The clerk shall administratively close the case, subject to reopening following the resolution of the Grafton County interpleader action.

**SO ORDERED.**

_____
Joseph N. Laplante
United States District Judge

Dated: January 30, 2012

cc: Terry Nason, pro se
    William S. Gannon, Esq.
    W.E. Whittington, Esq.

---

[7]Document no. 13.